If that's even remotely close to the proper pronunciation, at least the parties know since they're the last ones up they know who they are. Mr. Ticini, when you're ready. May it please the court, with respect to Arcelor's jurisdictional argument, at page 16 of its brief, it states When Eugene found himself in this position of having made a mistake on the entry, in their view, did they have the liberty of seeking a scope review at that point? At that point, they could seek a scope review that would be effective prospectively. Not retrospectively? No, only with respect to those entries that are suspended for the purpose of an administrative review. Let me clarify. So because by the time this happened, we were in the fourth administrative review, your view is that they did not have the liberty of seeking a scope decision with respect to entries that occurred during the first review? During the first review, which was completed, yes. And in fact, Eugene So they basically had no remedy at all, right? At the point that they discovered the error, according to you. That's absolutely true. And in fact, to clarify the facts here, in the submission that we made on Friday at the request of the clerk, we submitted a couple administrative record documents from the fourth administrative review. And if you look at page 3 of the document, Eugene lets the facts be known here. What occurred was, during the fourth period of review, because that's all they were talking about, UNA Belgium contracted with affiliate hot rollers in both Belgium and Germany to create this new merchandise. That new merchandise was then returned to Belgium, where it was then shipped to the United States. And the plaintiff here made a very detailed argument to the Department of Commerce why the entries subject to that administrative review, why those entries were outside of the scope of the order. Right. They weren't covering entries under the first administrative review. And you say they have absolutely no limit. But that's sort of a problem, right? Well, they had a remedy. And in fact, if you look at the But they recognized the mistake earlier. They could have done something during the first administrative review. But according to you, once the period for the first administrative review had passed, they had no remedy. Absolutely. And in fact, So what does it say in the regulation that there's a time limit on correcting this kind of error? Well, in the regulation, two points. First of all, the jurisdictional point that we made, the Department of Commerce in a regulation can't Well, let's just stick with the question. Is there a regulation that limits their time for correcting this kind of error? Yes. And in fact, in the scope regulation, it is limited to merchandise, quote, subject to suspension of liquidation. Suspension of liquidation is a term of art in the dumping law that refers to But that's a limit on the scope review. That's not a limit on correcting this error. I mean, you do have a regulation about correction of errors. Some of the errors can be corrected after liquidation, right? This isn't one of them, presumably. Correct? Correct. But you don't have a regulation that deals with this kind of error before liquidation. No, we have a statute. We have a statute. What's the statute? 19 U.S.C. 1675, subsection A, which mandates that when the Department of Commerce issues liquidation instructions upon completion of an administrative review, those liquidation instructions must comport with the final results of the administrative review. Here, you would The first administrative review made no determination about what kinds of steel was to be treated as Belgian or German or whatever. It just said, here's the dumping duty for Belgian steel. No, not at all, Your Honor, because what occurred was Hang on, forget what occurred. Forget what occurred. What did the order say? The order didn't say anything about what was Belgian steel. It just said Belgian steel, right? That's correct. And Eugene introduced merchandise as Belgian steel in each of those administrative reviews. It filed databases of United States sales in each of those administrative reviews, identifying all of those particular sales. And, in fact, to provide plaintiffs See, we told you in DeFerco that you look at the order, not at the proceeding. And, you know, you agreed, I thought, that the order didn't say anything except Belgian steel. It didn't tell you what's Belgian steel and what's not Belgian steel. Right? That's correct. And plaintiffs came up with a new argument during the Fourth Administrative Review that allowed them to get this merchandise within the scope of the order. And, in fact, possibly the domestic industry might have come up with a new legal argument in the Fourth Administrative Review that might have required the inclusion of other merchandise that, as of yet, was unliquidated from previous reviews within the order. But, likewise, that relief would be unavailable to the domestic industry because each administrative review, as the Court made clear in Norris-Kedrow, is a discrete review of a set of entries made during that period. And I wish to elaborate somewhat at this point on why it's reasonable to have this sort of administrative finality. This is not simply a clerical error where Commerce could instruct Customs to turn the switch and not liquidate entries at the rate that was determined in that particular administrative review. Really, the Department of Commerce would have to go back and look at each and every United States sale during that period of the merchandise that was Belgian. In fact, to remove German sales from these previous periods, Commerce would need to recalculate individual dumping margins for each entry of Belgian steel because under the statute, under Section 1677.35, Commerce has to calculate a weighted average dumping margin for all entries during a period of review. What would have happened here if there hadn't been any liquidation instructions telling Customs to not give them the retroactive benefit of the statement in the fourth administrative review? What would have happened? Suppose they went to Customs and said, We made a mistake on the entry form. We listed it as Belgian steel. It should have been listed as German steel, and we shouldn't have to pay any dumping duties. Suppose no liquidation instructions there. What would happen under those circumstances? Presumably, they would be talking to the wrong people. They'd be talking to the wrong people because you cannot separate out this calculation of a dumping margin for all of the entries. What would Customs tell them? They said, We made a mistake. This isn't German steel. It's Belgian steel. What would Customs do? Most probably, Customs would tell them to go to the Department of Commerce. And the reason is that the Department of Commerce controls the scope of its own anti-dumping orders. The Department of Customs does not determine whether merchandise is within scope. And returning to the facts of this case, this is not the case of a clerical error. The plaintiff reported all of these entries of merchandise as being Belgian merchandise. Are you suggesting a clerical error would be different, that the finality wouldn't apply? No, not at all. There are means for taking care of clerical errors. Even with respect to closed years administrative reviews? No, there's administrative finality at that point. You confused me when you said, This isn't the case of a clerical error. As if to suggest that, Oh, if there were a clerical error, this would be an error that they could get fixed. No, I just wish to set the record straight concerning the facts. And, in fact, another reason that Customs would say, Go back to the Department of Commerce, is that entries is not necessarily synonymous with sales. The plaintiff could have made one entry of a large amount of merchandise that could have been broken up into a number of different sales. A single sale could have contained entries that were hot-rolled in both Germany and Belgium. A single entry could also contain merchandise that was subject to both, that was hot-rolled in both Germany and Belgium. Who is going to undo that? The Department of Commerce has to undo that. Likewise, in calculating a weighted average dumping margin, the Department of Commerce How are they supposed to go to the Department of Commerce under those circumstances? You say they can't get a scope review because it's outside the period of the first administrative review. What's their remedy before Commerce, if Customs tells them to go away? Well, they had an adequate alternative remedy. So the answer is they say, We made a mistake, Customs. This is German steel, it's not Belgian steel. Customs says go to the Department. But, in fact, there's no remedy at the Department, is what you're saying. Yes, there's no remedy now because they had an adequate alternative remedy under International Customs Products and NorCal-Prosetti. They could have raised this issue in the first administrative review. So what Customs would say to them is not go to Commerce because there's no remedy in Commerce. Customs is supposed to say just go away. You can't correct the error, right? Well, Customs presumably would say this looks like a Department of Commerce problem. I don't think Customs would tell them to go away. But your position, if you were the czar of both Commerce and Customs, you would answer Judge Dyke's question yes, right? You would just say, I'm sorry, you've had your chance, you missed your chance, it's over, right? Yes, exactly. In fact, under the dumping law and under the court's jurisdiction, that's exactly what I would say. That's right. You're distinguishing between, if these entries had been liquidated, I take it there really wouldn't be much of a dispute here. That's absolutely true. So what we've got is something which is unliquidated but in which liquidation was not suspended. And you're distinguishing between unliquidated entries and entries that were subject to suspension. Because if these had been subject to suspension and therefore unliquidated because of the suspension order, you would be conceiving that all of this is open for reconsideration, correct? Of course. And those entries that were suspended, in this case the Department of Commerce did, in the fourth administrative review, it reached back to all of the entries that were subject to that review and found them outside the scope and no duties were imposed on them. But even if there had been, for some reason, suspension of liquidation all the way back to the first, then you'd say it's all open for reconsideration. A suspension of liquidation is an administrative suspension, so there was no suspension of liquidation for administrative proceedings going all the way back to the first review. Because as this Court held in the international trading cases, the suspension of liquidation is automatically lifted at the moment the Department of Commerce publishes final results in an administrative review. Okay. So, in other words, once the final results issue, it's the end of the suspension, and therefore the final results is for both reasons the end of the, it's finality for both reasons. That's absolutely correct. I understand. And then after publication, those results are, I mean, those entries are unliquidated, and then if there's a court of international trade challenge, those entries might be enjoined. I'd like to reserve my remaining two minutes for rebuttal unless the Court has further questions right now. Actually, I think you may have more than, well, yes, okay, fine. You can reserve that time for rebuttal. Thank you. Your Honors, may it please the Court. My name is Tom Willinger. I'm representing the Arcelor importers. What is the correct pronunciation of the first word, although we all refer to it as Arcelor? Arcelor. Yes, but how about the other one, the one that starts with a U that I butchered? Eugene. Eugene. Eugene, just like Eugene. All right. Let me start off. I could go through the whole thing, but I think this is really a pretty clear case, and I don't want to recite everything that's in the briefs. Let me try to respond to some of your questions. The determination that the Commerce Department made about the scope of this was quite clear, and it's printed in your earlier decision. It was made during the fourth review after we had. Yes, but I think your problem is that as I read this document that you sent us, this was a request that was directed to the dumping rate in the fourth review. It wasn't asking for broader relief. It wasn't a request for a scope review, right? Well, actually, Your Honor, in a sense that's right, but let me tell you how it came up. We, in the fourth review, we discovered we took over the case. We discovered that these entries had been misreported. What we did in the fourth review to Commerce, we said we put in, we are not reporting material that was hot-rolled in Germany and not further rolled. Your Honor, I understand that, but the government says at this point a scope review was not available to you. As I understand it, and tell me if I'm wrong, your view also is that a scope review was not available to you as a method of channeling. A scope review, I think it was, of course it was available. We didn't raise it as a scope review. Of course it was available. We said, well, maybe I'm missing something because I don't answer your question. Well, I mean, if a scope review was available, then maybe the government could say you should have gone and asked for a scope review, and you didn't, so it's too late. I don't know how we term it, whether you term it scope review or determination. We said to Commerce, this material is not included. The petitioners then came in and said, we want a scope determination. You're challenging liquidation instructions here. No, no, at that time, though, at the time of the fourth review, we indicated to Commerce that this, Well, am I missing something? Tell me. This whole area is a mess, right? I mean, there are like four different ways that you could challenge things. Yeah, but we did it. I'm just trying to, you know, it seems to me there's some sympathy towards you if your only remedy was to challenge the liquidation instructions, and you couldn't go for a scope review. On the other hand, if you could go for a scope review, maybe your failure to request a scope review is fatal to you. No, Your Honor, we're confusing times. Following the fourth review, there was no scope to challenge at the time. There was no scope to view availability. At that time, what happened is, The only way you could challenge it was by challenge liquidation instructions. Well, that's right. We could only challenge the liquidation instructions when they tried to apply, when they tried to apply an order on Belgian steel to German steel. That was clearly conquered. That's all we could challenge. We raised the issue, and the petitioners did. The petitioners actually argued that German steel, steel that was rolled in Germany and not further rolled in Belgium, they said should be treated as Belgian steel. That was something the Commerce Department considered in the fourth review. They made a clear decision. They said it is not subject to the order, not just to the review, to the order. We thought that was fine. We also had gone to Customs. In the scheme, the statutory scheme, Commerce sets the scope, and then Customs is the one that applies the facts to it, to see, well, if this is rolled in Germany and not further rolled, then it's not subject to the order. So we also went to Customs. Then after the fourth review, Commerce, what one would expect in accordance with their consistent policy, what they always do, if they make a determination that a product is outside the scope of the order, they apply that back to all unliquidated entries. We were going to Customs to do that. That's part of the liquidation instructions. Yes, they do it as part of liquidation instructions. Normally, consistently, that's their practice. Okay, so your argument is the way to challenge this is if they don't do the right thing in the liquidation instructions, then you have a right to challenge that. Absolutely, and that was the only decision. And that was the only remedy that you had at that time. Exactly, and not only was it the only remedy, it was the only decision we challenged. There was no other decision during this whole period that we challenged. There was nothing we could have challenged earlier. No, there's no doubt that Arcelor, or actually it's Customs Broker, made a mistake in reporting German steel as Belgian. They did, and I think the issue, you know, does that change anything? And I don't think it does. Nobody was hurt by it. The only people hurt by it was us. We put up millions of dollars in cash deposits over the years, and we're coming in and saying this is a mistake. You have held that this is not subject to the order. It's not subject to the order. So what determines finality? Is it liquidation? Well, I think it depends on the issue, but for Customs assessment purposes, yes, it's liquidation. This is an issue. The issue here, we challenged the liquidation instructions. The liquidation, liquidation instructions, we don't challenge the determination that this stuff is outside the order. We agree with that. It was the liquidation instructions. Liquidation is open until duties are open until final liquidation. The regulations are clear about that. We accept administrative finality. We're not challenging liquidated entries. Well, there is some opportunity to challenge liquidated entries, right, under 173.4? 173.4. I'm sorry. I should be more familiar. Well, that has to do with correction of clerical mistake. Yes. And not only that, you know, it's final liquidation, too. There is a procedure, of course, for protesting a liquidation if you've already made an argument and you disagree with it. But it's liquidation is the administrative finality for Customs assessment purposes. That's it. It is. Could Commerce adopt a regulation that says if you make an error in the entry, you've got to correct it within a year or two years? I think they might be able to do that. I would argue that it's questionable to me because I don't know whether they have legal authority to impose anti-dumping duties on products not covered by an anti-dumping order. But I think it could be debatable as part of a process. The interesting thing here is that if they wanted to achieve administrative finality, that would be one way to do it, would be to issue a regulation saying you can make an error, you've got to correct it within a year or six months or whatever it is, whatever period. There is no such regulation. There is no such regulation, but there is a regulation of administrative finality for Customs assessment purposes, and that's the regulations dealing with liquidation. Prior to final liquidation, people can question things and nobody is harmed. That's the administrative finality. The extraordinary thing to me, Your Honors, is that in this case what Commerce has done is, you know, they say that they need to do this and they talk about the calculations. Whenever it is a consistent rule, whenever they determine that a product is outside the scope of an order, they go back and say, you know, that product should be out for all unliquidated entries. That's what they always do. I'm not so sure about that. I mean, under Torrington, it seems as though their view is that a scope review can't work back to proceedings and early administrative proceedings. No, I'm glad you raised it because it's very interesting. They did not raise the Torrington argument, which I consider, frankly, using their terms  They dropped that argument. And the Torrington argument is really that Timpkin made clear, and that was a case where they had decided an additional product was within the order and the court in Timpkin said you could go back for all unliquidated entries. In the remand, Commerce didn't quite do that. Torrington affirmed that summarily without argument or discussion. Let's distinguish between Commerce's Torrington and the CIT's Torrington, right? We're talking about Commerce's Torrington here? Commerce's Torrington, but then the CIT's Torrington too, which was sort of a summary affirmist of what Commerce did. But, Your Honor, let me start off again. They dropped that argument. They did not argue it to this court. And it's interesting to me, their whole idea Yeah, but you agree with them. No, I don't agree. You better, because if the scope review was available to you to go back and look at these entries and you didn't avail yourself of the scope review, you got a problem. Scope review... We are misunderstanding each other in something that I'm worried that it could hurt us because we challenged the only thing we could challenge, a liquidation instruction to apply... The scope review procedure wasn't available to you at that point. No, there was no scope issue. No, you couldn't raise it. Not that there wasn't an issue. You couldn't raise this issue through a request for a scope review. We couldn't raise it. We could not raise it, but there... Yeah, because Congress agreed with us that it was outside the scope. No, no, no. There's a procedure in the statute, in the regulations for scope review. Yes, yes. That procedure wasn't available to you. You had to challenge the liquidation instructions. Well, we had to challenge the liquidation instructions. Your Honor, I want to agree with you, but can I just say there was no scope issue. Your Honor, there was no scope issue. Because they agreed with us that steel rolled in Germany is outside the scope of the order. As they said, it's not subject to this order. So there was nothing for us to challenge that was not available to us. When they then issued instructions saying, even though it's outside the scope of the order, we're going to assess duties on it as if it is subject to the order, that's what we challenged. That's all we could challenge. It's all that was available to us. How often does this situation arise in which the... The liquidation... I'm specifically adverting to the problem that there's no longer a suspension of liquidation because of the effect of the final determination of the administrative review, but there is nonetheless, for collateral reasons, the entries have not been liquidated from prior administrative reviews. How often does that happen? Well, Your Honor, I'm confused by that as well and by their distinctions because all the entries were... liquidation was suspended pursuant to CIT order. Well, enjoined or suspended? Well, let's talk about suspended as opposed to enjoined. I think if I understand this correctly, and the odds are pretty good that I don't, but to the extent that I understand it, I understand there to be a distinction, and an important one potentially, between suspension and enjoined liquidation. Now, assuming that I'm right about that, and you can tell me I'm wrong about that in a minute, but assuming I'm right about that, how often does this situation arise in which the liquidation has not occurred with respect to past administrative reviews, but nonetheless the liquidation is not suspended? I really can't say. I think it probably happens quite often because a lot of administrative reviews are challenged in court, and then while the administrative suspension... But then the administrative review would not have become final, I guess, or would have been enjoined, right? But that's really what I think happened here. Administrative reviews were still subject to court action, and then therefore the suspension of liquidation was not ended. I don't know. You're making a distinction as today, and I don't know whether it might be appropriate between... Well, that was an important part of what I understood Mr. Tessini's argument to be. Well, I can't understand. If it is, may I just say, to me it's a little bit like dancing on the head of a pin. One is enjoined by the court pursuant to a question of an administrative proceeding. The other is being suspended or enjoined. Really, that's what a suspension is. You enjoin the liquidation while the review is going on by the administration. In either case, liquidation does not occur, and so there's not been a liquidation. There's still open to recalculation to the correction of mistakes. What Congress did here was contrary to its consistent rule. It reached out and said, Customs, you can't correct this. You can't get it right. Now, that's extraordinary. Nobody is hurt by getting it right. It's as if I go into a store and I give somebody $20 for a $10 item, and I come back and say, gee, I gave you too much, and they say, well, you gave it to me. I say, yeah, but why can't I have my $10 back? Well, they say you gave it to me. How does it hurt you to give it to me back? That's an argument that could be made by every victim of the application of the statute of limitations to the rules of finality. And it does. In the history of the law. Absolutely. That's what happens when you apply rules of finality. So the question is, is this a situation in which the rules of finality and the interests underlying the rules of finality ought to apply or not? It's not enough to say that, gosh, if none of these procedural bars were present, I would get my money back. The government should not have the right to create a rule of finality that does not exist. It exists in the regulations. Liquidation, final liquidation is administrative final. It establishes the bar. We don't question liquidated entries. When they're not liquidated, they shouldn't have the right to create a new rule, and particularly when it's directly contrary to the consistent rule in everything they've done in every case since the beginning, which the court below cited and which we cited, you know, in the pages in our brief. They always go back. If they say something's outside the order, they say assess duties without regard to the any dumping order or countervailing duty order for all unliquidated entries. There's no reason to make a distinction. You know, let me just say one other thing. They make another argument. They say, well, we made this determination that these goods are not subject to the order. We made them in the fourth review. It's part of the fourth review. That's a matter of administrative convenience that they can determine that certain goods are not part of the order, not subject to the order. But that determination, the effect of that doesn't relate just to entries in that review. It defines the scope of the order, defines the scope of the order. And then as they have always applied that determination back to all unliquidated entries where there's not administrative finality, that's it. Even in prior reviews. They've done it and they've been included. We cite the cases, and now I won't remember them because I left them down here. That's all right. I'll be excited when we've got them. Thank you, Your Honor. Thank you. Mr. Cassini, you had two minutes. Let's add another minute. Mr. Woodard, if you could give him three minutes, we can proceed. Thank you. I will try not to use it all. Why don't you pick up on the last point made and your agreement or disagreement? Well, the last point made appeared to be that there was a practice of commerce going back and addressing all unliquidated entries. And we distinguished that in our reply brief. And anyhow, commerce could not violate a statute and its regulation. And, in fact, the liquidation instructions that plaintiffs are attempting to It's regulation. Excuse me? You see In the scope regulation and by agency practice and scope regulation. The statute here mandates that the final results of any administrative review shall be the basis for the assessment of countervailing and anti-dumping duties. So that is the governing law here. Likewise, with respect to jurisdiction, plaintiffs stated the only thing we could challenge was the liquidation instructions. Well, under the court's precedent in ICP and Nordhoff-Prosetti, the correct analysis would be the only thing we could have challenged. In fact, the word could have. Could they have gotten relief through some other avenue? And, yes, they could have gotten relief under 1581C in the first, second, and third administrative reviews. And, finally, to conclude, if you just send this back to customs and don't impose any duties on those sales of merchandise. You can't even do it for entries because there might be sales that some sales of subject, some sales of non-subject that were entered at the same time. It would necessarily result in an inaccurate assessment of duties on the remaining Belgian entries. For these reasons, we respectfully request that the court reverse the judgment below. But did I misunderstand your first question, Judge Crosby? I think it was Judge Crosby's question. No? Thank you. Thank you. The case is submitted. And that ends the cases for today. Thank you.